UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY A. LEWIS,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR J.P. MORGAN MORTGAGE TRUST 2005-A7,<br><br>    Defendant. | Case No. 16-cv-05490-JSW<br><br>**ORDER GRANTING APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER DIRECTING PLAINTIFF TO SERVE DEFENDANT AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; AND SETTING HEARING ON MOTION FOR PRELIMINARY INJUNDCTION**<br><br>Re: Dkt. No. 5 |

Now before the Court for consideration is the *ex parte* application for a temporary restraining order filed by Plaintiff. Defendant has not yet appeared in this action. The Court has considered Plaintiff's opening brief, relevant legal authority, and the record in this case. For the reasons set forth herein, the Court GRANTS Plaintiff's application and enjoins the Trustee Sale that is scheduled for September 29, 2016 at 1:30 p.m. Plaintiff shall serve a copy of the Complaint, the *ex parte* application for a temporary restraining order, and a copy of this Order on Defendant.

## BACKGROUND

On September 26, 2016, Plaintiff filed a complaint alleging claims for cancellation of instruments, under California Civil Code section 3412 violations of California's Unfair Competition Law, Business and Professions Code sections 17200, *et seq.*, declaratory relief, violations of California Civil Code section 2923.55, and breach of contract. (Dkt. No. 1.) On

September 28, 2016, Plaintiff filed his application for a temporary restraining order seeking to enjoin a foreclosure sale that he represents is scheduled for 1:30 p.m. on Thursday, September 29, 2016. (Dkt. No. 5.)

Plaintiff alleges that on November 27, 2002, he obtained a loan in the amount of $650,000 from Wells Fargo Home Mortgage, Inc. ("Wells Fargo") for real property located at 236 Montego Drive, Danville, CA, 94526 (the "Property"). (Compl. ¶¶ 1, 14, Ex A (Deed of Trust), Ex. B. (Promissory Note).) Pursuant to the Deed of Trust, Wells Fargo is identified as the "Lender," and Fidelity National Title Insurance Company ("Fidelity") is identified as the Trustee. (*Id.* ¶ 15, Ex. A.) Plaintiff also alleges that, on or about February 8, 2011 and March 2, 2012, respectively, two assignments were executed that purported to assign Wells Fargo's beneficial interest in the Deed of Trust to Defendant. (*Id.* ¶¶ 17-20.) These assignments are not attached as exhibits to the Complaint. Plaintiff also alleges that on or about May 18, 2015, Defendant purported to substitute in Quality Loan Services Corporation ("Quality") as Trustee in favor of Fidelity. (*Id.* ¶¶ 21, 31.)[1] The Substitution of Trustee is not attached as an exhibit to the Complaint. Quality recorded a Notice of Default on May 26, 2015. (*Id.* ¶ 22, Ex. C.)

According to Plaintiff the assignments to Defendant are void, because they "occurred well after the Trust's closing date in 2005" and "the Notice produced by Wells Fargo lacks proper endorsement[.]" Plaintiff also alleges that the Quality's substitution as Trustee is void, because Defendant was not the beneficiary under the Deed of Trust and had no power to substitute a Trustee. (*See id.* ¶¶ 21, 23-26.) According to Plaintiff, the parties also did not follow the procedures set forth in the Deed of Trust to properly substitute Quality as Trustee in favor of Fidelity. (*Id.* ¶¶ 21, 32.) Thus, Plaintiff contends that because Defendant is not a proper beneficiary under the Deed of Trust and Quality was not a proper Trustee, Defendant had no power to institute foreclosure proceedings. (*Id.* ¶¶ 27-32.) Plaintiff also attests that "I disagree and deny that I was in default in the amount of $172,298.02, on or about May 22, 2015." (Lewis Decl., ¶ 7.)

---

[1] Paragraph 21 appears to contain a typographical error for the date of the substitution of trustee.

2

The Court shall address additional facts as necessary in its analysis.

## ANALYSIS

**A.   Applicable Legal Standard.**

In order to obtain a TRO, the moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008) (citations omitted). The *Winter* court also noted that, because injunctive relief is "an extraordinary remedy," it "may only be awarded upon a clear showing that the [moving party] is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). Thus, "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 (citing *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)).

In *Alliance for the Wild Rockies v. Cottrell*, the Ninth Circuit held that the "serious questions" sliding scale approach survives *Winter*. 632 F.3d 1127, 1134-35 (9th Cir. 2011). Thus, this Court may grant relief if the moving party demonstrates that there are serious questions going to the merits and a hardship balance that tips sharply toward the moving party, if the other two elements of the *Winter* test are also met. *Id.* at 1132. This allows the Court "to preserve the status quo where difficult legal questions require more deliberate investigation." *See Sencion v. Saxon Mortg. Services, LLC*, No. 10-cv-3108 JF, 2011 WL 1364007, *2 (N.D. Cal. April 11, 2011).

A court may issue a TRO without "written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit ... clearly show that immediate an irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A)-(B).

**B.   Notice.**

Defendant has not appeared in this action, and it does not appear that it has been served with the Complaint or a copy of the application for the TRO. However, on September 27, 2016, at

3

approximately 9:39 a.m., an employee of Plaintiff's counsel "contacted U.S. Bank National Association at 800-236-3488," and spoke with an individual in the Customer Service Department named "Chantelle." (Declaration of Maria Yolanda Lepe, ¶ 2.) Ms. Lepe informed Chantelle that Plaintiff, through counsel "would be appearing Ex Parte on Wednesday, September 28, 2016 in a Courtroom to be determined by the court at 450 Golden Gate, San Francisco, CA." (*Id.*) Ms. Lepe "also stated that [Plaintiff] would be asking for a Temporary Restraining Order to stop the Trustee sale scheduled for September 29, 2016, at 1:30 p.m." (*Id.*) Ms. Lepe also sent a letter conveying that information to sfmortgageresearch@usbank.com at 9:55 a.m., per Chantelle's instruction. (*Id.*, Ex. A.) According to Plaintiff, he received no response from U.S. Bank as to whether anyone would appear to oppose the motion. (*Id.*)

In light of the timing of the filing of Plaintiff's TRO and the timing of the Trustee Sale, and for reasons discussed below, the Court concludes that Plaintiff has satisfied the requirements of Rule 65(b)(1)(A) and 65(b)(1)(B). If the Court does not act at this time, the Trustee's Sale could go forward and would alter the status quo. Thus, given the time sensitive nature of the relief requested, the Court finds that the TRO should issue without further notice, and without requiring a response from Defendant. However, Plaintiff shall be required to serve a copy of the application for a TRO and this Order on Defendant, in accordance with the Federal Rules of Civil Procedure, by no later than 12:00 p.m. on September 29, 2016. Plaintiff must also serve a copy of the Complaint forthwith.

### C.     Serious Questions Going to The Merits.

The underlying theme of Plaintiff's complaint is that the impending foreclosure of his home is wrongful, because Defendant is not the current beneficiary of the Deed of Trust and Quality was not properly substituted in as Trustee. In the context of non-judicial foreclosure proceedings, "only the current beneficiary" of a deed of trust "may direct the trustee to undertake the nonjudicial foreclosure process." *Yvanova v. New Century Mortgage*, 62 Cal. 4th 919, 927-28 (2016). "A foreclosure initiated by one with no authority to do so is wrongful for purposes of" a wrongful foreclosure action. *Id.* at 929. As discussed above, Plaintiff alleges that the purported assignment of his loan to Defendant is void, because it occurred after a closing date set forth in the

4

Pooling and Servicing Agreement.

"[A] borrower can challenge an assignment of his or her note and deed of trust if the defect asserted would void the assignment." *Glaski v. Bank of America*, 218 Cal. App. 4th 1079, 1095 (2013). In *Yvanova*, the California Supreme Court followed *Glaski* on the limited issue of "whether a wrongful foreclosure plaintiff may challenge an assignment to the foreclosing entity as void[,]" *i.e.* whether the borrower had "standing" to assert such a claim. *Yvanova*, 62 Cal. 4th at 935; *see also id.* at 935-41. In this case, Plaintiff seeks to prevent the foreclosure, which places this case in a different procedural posture than *Yvanova* and *Glaski*. Some California courts have not "allow[ed] such preemptive suits" and have reasoned that it 'would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature." *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 814 (2016) (quoting *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 513 (2013), *disapproved of on other grounds by Yvanova*, 64 Cal. 4th at 939 n.13). However, at least two courts within this District, as well as the undersigned judge, have found that the fact that a trustee's sale has not yet occurred would not bar such claims, if there are facts to suggest an assignment was void. *See Powell v. Wells Fargo Home Mortgage*, No. 14-cv-04248-MEJ, 2016 WL 1718189, at *8 (N.D. Cal. Apr. 29, 2016); *Lundy v. Selene Finance, L.P.*, No. 15-cv-05676-JST, 2016 WL 1059423, at *13 (N.D. Cal. Mar. 17, 2016); *see also Reed v. Wilmington Trust, N.A.*, No. 16-cv-01933-JSW, Dkt. No. 33.

Plaintiff has not attached the assignments as exhibits to the Complaint, and there is no information in the record as to what law governs the Pooling and Service Agreement. On this record, the Court could not find, as a matter of law, that the assignments were voidable, rather than void. *See, e.g, Morgan v. Aurora Loan Services, LLC*, -- Fed. Appx. --, 2016 WL 1179733, at *2 (9th Cir. Mar. 28, 2016) ("an act in violation of a trust agreement is voidable – not void – under New York law") (citing *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 87-90 (2nd Cir. 2014); *Rajamin*, 757 F.3d at 88 ("weight of New York authority is contrary to plaintiff's contention that any failure to comply with the terms of the PSAs rendered defendant's acquisition of plaintiffs' loans and mortgages void as a matter of trust law"); *Saterbak v. JPMorgan Chase Bank, N.A.,* 245 Cal. App. 4th 808, 815 (2016) (an assignment to a securitized trust that is made

after the closing date is "merely voidable"). For that reason, the Court concludes that Plaintiff has raised serious questions going to the merits of his claims. In addition, although Plaintiff has not alleged facts showing he has tendered the amount due, because the Trustee Sale has not yet occurred, the Court concludes there also are serious questions going to the issue of whether tender should be excused. *See Chavez v. IndiMac Mortgage Services*, 219 Cal. App. 4th 1052, 1062 (2013); *Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250, 1280-81 (2012).

The Court proceeds with the sliding scale analysis.

D. **Balance of Hardships.**

Plaintiff attests that the property is his family's primary residence. (Declaration of Roy A. Lewis, ¶ 3.) Although the record suggests that Plaintiff has been in default since 2015, at this stage, there is nothing in the record to suggest that issuing a TRO could cause damage the Property or otherwise threaten Defendant's security interest in the Property. If this Court ultimately determines that Plaintiff's claims have no merit and allows the Trustee's Sale to proceed, then Defendant would be able to recover the Property. On the other hand, the Court determines that permitting the Trustee's Sale to proceed before the Court has evaluated the merits of Plaintiff's claims would result in severe hardship to Plaintiff. In light of these considerations, the balance of hardships weighs heavily in favor of injunctive relief.

E. **Irreparable Harm.**

The Court concludes that the loss of a residence through foreclosure presents an irreparable injury.

F. **Public Interest.**

Although Defendant has not yet appeared, the Court recognizes the public interest of enforcing Defendant's secured property interests against default. On the other hand, the Homeowner's Bill of Rights ("HBOR") was enacted in California "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4. Plaintiff includes some allegations that the Notice of Trustee's Sale was recorded at a time when

6

foreclosure prevention options were being discussed, in violation of HBOR. (Compl. ¶ 43.)

The Court concludes that the public interest also weighs in favor of granting a TRO in this case.

G.  **Issuance of the TRO and Bond Requirement.**

Applying the "serious questions" sliding scale approach recognized in *Alliance for The Wild Rockies*, the Court determines that issuance of a temporary restraining order to enjoin the foreclosure sale of the Property is proper based on the serious questions raised by Plaintiff's claims, the balance of hardships tipping heavily in favor of Plaintiff, the strong likelihood of irreparable injury to Plaintiff if injunctive relief is denied, and the public interest weighing in favor of granting a TRO.

Under Rule 65, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). Because Defendant has a secured interest in the Property and will be permitted to proceed with foreclosure if the Court determines that Plaintiff does not have meritorious claims, the Court does not require Plaintiff to post a bond at this time.

## CONCLUSION

For the reasons set forth above, Plaintiff's application for TRO to enjoin the September 29, 2016 Trustee's Sale of the Property is GRANTED and Defendant is HEREBY ORDERED to Show Cause at 9:00 a.m. on October 11, 2016 at the United States Courthouse, 1301 Clay Street, Courtroom 5, Second Floor, Oakland, California, why a preliminary injunction should not be issued. Plaintiff shall file and serve a motion for a preliminary injunction by no later than 4:00 p.m. September 30, 2016. Defendant shall file and serve an opposition to the motion by no later than 1:00 p.m. on October 5, 2016, and Plaintiff shall file and serve a reply by 1:00 p.m. on October 7, 2016.

PENDING HEARING on the above Order to Show Cause, Defendant, its officers, agents, servants, employees, attorneys, and all persons acting in concert with Defendant, or on behalf of Defendant, ARE HEREBY RESTRAINED AND ENJOINED from directly or indirectly initiating

foreclosure proceedings on the Property.

It is FURTHER ORDERED that this Order has been issued at 6:05 a.m./p.m. on 9/28, 2016, and it shall expire by its terms fourteen (14) days from the date and time it was issued.

**IT IS SO ORDERED.**

_____
JEFFREY S. WHITE
United States District Judge